THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROL ANN SMITH and STEPHEN L. SMITH, wife and husband,<br><br>Plaintiffs,<br><br>v.<br><br>AIRCRAFT SPECIALTIES SERVICES, INC., an Oklahoma corporation, and JOHN DOES 1-20,<br><br>Defendants. | CASE NO. C18-0412-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Aircraft Specialties Services, Inc.'s motion for summary judgment (Dkt. No. 18), Plaintiffs' motion for leave to amend and to continue pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. No. 21), and Defendant's motion for Federal Rule of Civil Procedure 11 sanctions (Dkt. No. 33). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendant's motion for summary judgment (Dkt. No. 18), DENIES Plaintiffs' motion for leave to amend and to continue (Dkt. No. 21), and DENIES Defendant's motion for Rule 11 sanctions (Dkt. No. 33) for the reasons explained herein.

## I.   BACKGROUND

On September 28, 2015, Plaintiffs were injured when their aircraft crashed. (Dkt. No. 1 at

2.) Plaintiffs owned the aircraft, a Cessna 150F model aircraft with a Continental Motors 0-200 Series model engine. (*Id.*) The National Transportation Safety Board ("NTSB") concluded that the crash was caused by a loss of engine power "due to the mechanic's inadequate tightening of the crankshaft gear restraining bolts during an engine overhaul, which resulted in fatigue failure of the bolts and the crankshaft gear dowel pin that allowed the crankshaft gear to separate from the crankshaft." (Dkt. No. 19-5 at 2.) Four part number 22532 bolts were involved in the crash (the "subject bolts"): two were marked with "CP" (the "CP 22532 bolts"), and the other two were unmarked Continental Motors, Inc. bolts (the "CMI 22532 bolts"). (Dkt. Nos. 18 at 5, 19-3 at 52–53.)

In September 2013, prior to the crash, Thomas Downey, a Washington aircraft mechanic, rebuilt the aircraft's engine. (Dkt. Nos. 1 at 2, 19-4.)[1] At his deposition in December 2018, Downey could not specifically recall performing the engine rebuild, whether he or Plaintiff Stephen Smith had placed the order for parts for the rebuild, or when the parts were ordered. (Dkt. No. 19-11 at 16, 108–09.) But Downey stated that he had just started to order parts from Defendant when he performed the rebuild, and therefore he "would assume that [the parts] all came from Defendant." (*Id.* at 109.) After this testimony, Downey then said that he was certain that the parts had come from Defendant. (*Id.*) When asked how he could be certain, Downey stated that, "When I got the parts they were in bags from [Defendant]. It was in their bags with

---

[1] In their response to Defendant's motion for summary judgment, Plaintiffs assert that Defendant "completely reworked the engine to new tolerances in their shop and then sent the entire overhauled engine in pieces back to Mr. Downey," and that Downey ordered parts necessary for the reassembly from Defendant. (Dkt. No. 24 at 2.) But the passages of Downey's testimony cited by Plaintiffs do not support their contention that Defendant rebuilt the engine. (*See id.*) Also, the engine logbook for the aircraft shows that Downey performed the most recent engine overhaul. (*See* Dkt. No. 19-4; *see also* Dkt. No. 19-5 at 6) (NTSB report describing Downey as "the . . . mechanic who had performed the engine overhaul"). Further, during his testimony, Downey reviewed a work order from Defendant that showed Downey sent various components to Defendant for repair, not the entire engine. (*See* Dkt. No. 19-11 at 129.) Therefore, Plaintiffs' assertion that Defendant in fact overhauled the engine and changed its specifications is unsupported by the cited record.

part numbers on them, otherwise I couldn't have used them . . . . It is standard practice for every engine I do, [Plaintiff Stephen] Smith's included." (*Id*. at 177, 179.)[2]

On March 19, 2018, Plaintiffs filed the present lawsuit against Defendant. (Dkt. No. 1.) Plaintiffs allege that "Invoice number 127873 indicates that [Defendant] charged Mr. Smith for the new crankshaft gear bolts/screws . . . and then shipped them directly to Mr. Downey in Washington State." (*Id*. at 2.) Plaintiffs assert that "the subject bolts were defective, failed in mid-flight, and caused the engine to quit running . . . ." (*Id*. at 2.) Plaintiffs bring claims for: (1) violation of Washington's Product Liability Act, Wash. Rev. Code § 7.72; (2) strict liability of Defendant for defective manufacture of the subject bolts; (3) negligence; and (4) breach of warranty. (*Id*. at 6–10.) Plaintiffs' claims are premised on their contention that Defendant designed, manufactured, marketed, tested, sold, or delivered the subject bolts, that Defendant warranted as to the quality of the subject bolts, and that Defendant provided instructions and warnings pertaining to their use. (*Id*.)

Defendant does not design, manufacture, or test crankshaft bolts. (Dkt. No. 19-6 at 8–9.) Rather, in addition to performing repair work, Defendant sells new aircraft parts ordered from vendors. (Dkt. No. 19-3 at 39.) Defendant was able to determine that "CP" stood for Chandler Products through research conducted after this case commenced. (*Id*. at 104.) Defendant has never carried Chandler Products bolts. (*Id*. at 105.) Defendant sold 64 CMI 22532 bolts between 1996 and 2013. (*Id*. at 97.) At the end of 2012, Defendant had 24 CMI 22532 bolts in stock. (*Id*.

---

[2] Downey is not a party to this lawsuit and was not represented by counsel at his deposition. (Dkt. No. 19-11 at 11; *see generally* Dkt. No. 1.) During his deposition, Downey disclosed that he had previously been in contact with Plaintiffs' counsel about both the nature of the lawsuit and to discuss Downey's upcoming deposition. (Dkt. No. 19-11 at 91–92, 204–07.)

Also during Downey's deposition, Defendant read a discovery response from Plaintiffs, stating "Mechanic Tom Downey has now confirmed that he has received other inferior, quote, mystery 22532 screws from defendant. He is very concerned about these inferior, quote, mystery screws in other motors." (*Id*. at 202.) When asked whether he agreed with that statement, Downey responded that, "I don't know if I agree with it or not. I don't understand it." (*Id*.) When further asked, "Did you tell it to anyone?," Downey said, "I don't think I did." (*Id*.)

ORDER
C18-0412-JCC
PAGE - 3

at 99.) In 2013, Defendant sold a total of four CMI 22532 bolts. (*See id*. at 97, 99.) These four CMI 22532 bolts were sold to Paradise Valley Flying Service on May 7, 2013. (Dkt. No. 19-10.) Defendant's records do not show any other sales of CMI 22532 bolts during 2013, including to Downey. (*Id*.)

Defendant's employees follow a specific process to fill orders placed by customers. (Dkt. No. 19-3 at 83.) Customers may place "verbal orders." (*Id*. at 84.) Verbal orders begin when a customer calls and speaks to a salesperson, who creates a sales order based on what the customer requests during the call. (*Id*.) The sales order is printed and taken to Defendant's parts area, where the requested materials are gathered, packed, checked for accuracy with the order, sealed, and weighed for shipping. (*Id*. at 84–85.) An automatic system then converts the sales order into an invoice with the applicable freight and handling charges. (*Id*. at 85.) Once payment is received, the items and invoice are sent to the customer. (*Id*. at 85–86.)

Downey placed a verbal order from Defendant, and communicated with Defendant's employee, Mike Holley. (Dkt. No. 19-3 at 92–93.) Holley followed Defendant's standard procedure for filling verbal orders. (*Id*. at 93–94.) The sales order for the transaction listed four part number 22534 screws and 4 part number 646920 screws, along with other miscellaneous items. (Dkt. No. 19-8.) Holley's sales order was converted into Invoice 127873, which was billed to Plaintiff Stephen Smith. (Dkt. Nos. 19-3 at 89, 94; 19-7.) The items listed on Invoice 127873 matched those on the sales order. (*Compare* Dkt. No. 19-7, *with* Dkt. No. 19-8.) Neither document includes 22532 bolts. (Dkt. Nos. 19-7, 19-8.)[3]

Defendant's counsel twice asked Plaintiffs' counsel to dismiss this lawsuit. On September 6, 2018, Defendant's counsel sent Plaintiffs' counsel a letter noting that Invoice 127873 did not show that Defendant had sent Downey any 22532 bolts and that he was unaware

---

[3] When defense counsel noted that Invoice 127873 did not include 22532 bolts during Downey's deposition, Downey responded that the document was "not totally accurate. That's why the [Federal Aviation Administration] does not use them for traceability of parts . . . . It's not proof of anything other than what was billed." (Dkt. No. 19-11 at 156.)

of any other record or document showing that Plaintiff Stephen Smith had purchased the subject bolts from Defendant. (Dkt. No. 34-1.) Defendant's counsel requested that Plaintiffs either provide such evidence or dismiss their claims against Defendant. (*Id*.) Plaintiffs declined to do either. (Dkt. No. 33 at 2.) On December 14, 2018, Defendant's counsel reiterated his request following Downey's deposition, citing Downey's inconsistent deposition testimony and contacts with Plaintiffs' counsel prior to the deposition. (Dkt. No. 34-2.) Plaintiffs again declined. (Dkt. No. 33 at 2.)

Defendant now moves for summary judgment on Plaintiffs' claims. (Dkt. No. 18.) In response, Plaintiffs move for a continuance pursuant to Federal Rule of Civil Procedure 56(d) and for leave to amend their complaint. (Dkt. No. 21.) Defendant also moves for sanctions against Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 11. (Dkt. No. 33.)

## II.     DISCUSSION

### A.     Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The subject bolts are two CP 22532 bolts and two CMI 22532 bolts. (Dkt. Nos. 18 at 5, 19-3 at 52.) As discussed above, Defendant was able to determine that "CP" indicates that the CP 22532 bolts were manufactured by Chandler Products; Defendant has "not carried Chandler Products bolts, and certainly during the time frame from '96 until 2013, [Defendant] did not have Chandler Products bolts in [its] inventory." (Dkt. No. 19-3 at 104–05.) Plaintiff has not offered contravening evidence showing that Defendant did in fact carry Chandler Products bolts or somehow otherwise supplied the CP 22532 bolts involved in the crash. Therefore, there is no genuine dispute of material fact that the CP 22532 bolts were not manufactured or sold by Defendant.

Defendant does not design, manufacture, or test crankshaft bolts. (Dkt. No. 19-6 at 8–9.) Although Defendant does carry CMI 22532 bolts in its inventory, (*see* Dkt. No. 19-3 at 97), Defendant has offered evidence establishing that the CMI 22532 bolts involved in the crash did not originate from Defendant. First, contrary to Plaintiffs' assertions in their complaint, Invoice 127873 does not include 22532 bolts. (*Compare* Dkt. No. 19-7, *with* Dkt. No. 1 at 2.) Although Invoice 127873 lists 22534 screws and 646920 screws, (Dkt. No. 19-7), neither is 22532, the part number of the subject bolts. (*Compare id.*, *with* Dkt. Nos. 18 at 5, 19-3 at 52–53.)

Second, Defendant's inventory records show that the CMI 22532 bolts it sold during 2013 were not sold to Downey. Defendant had 24 CMI 22532 bolts in stock at the end of 2012, and had 20 CMI 22532 bolts in stock at the end of 2013. (Dkt. No. 19-3 at 97, 99.) Defendant's inventory records show that the four CMI 22532 bolts it sold during 2013 were sold to Paradise Valley Flying Service, not to Downey. (Dkt. No. 19-10.) In fact, Defendant's inventory records appear to show that none of the CMI 22532 bolts it has sold since 1996 were sold to Downey. (*See id.*) Thus, Defendant's inventory records both demonstrate that Defendant did not ship the CMI 22532 bolts to Downey and weigh against a finding that Defendant accidentally included any CMI 22532 bolts in its shipment of parts to Downey. (*See* Dkt. No. 19-3 at 98–99.)

Third, Defendant's employees testified as to Defendant's procedure for processing verbal

orders received from customers, which includes several checks to ensure that the items listed on the sales order are the same items that are shown on the resulting invoice and shipped to the customer. (Dkt. No. 19-3 at 83–86.) Holley followed Defendant's procedure for processing Downey's verbal order. (*Id.* at 92–94.) The sales order used by Holley does not include part number 22532 bolts. (*See* Dkt. No. 19-8.) Invoice 127873 matches the items listed on the sales order; thus, it too does not include any part number 22532 bolts. (*See id.*, Dkt. No. 19-7.)

In sum, Defendant's documentary evidence and testimony establishes that Invoice 127873, relied on by Plaintiffs in their complaint, does not show that Defendant sent Downey any 22532 bolts. Further, Defendant's inventory records show that the four CMI 22532 bolts it sold during 2013 were not sold to Downey. Finally, Defendant's testimony of its order fulfillment process indicates that the items listed on a sales order and resulting invoice are the items shipped to the customer; in this case, Holley's sales order and Invoice 127873 show that no 22532 bolts were sent to Downey by Defendant. In light of this evidence, Defendant has carried its initial burden of establishing that there is no genuine dispute as to whether Defendant sent the CMI 22532 bolts involved in the crash to Downey.

In response, Plaintiffs first contend that a genuine issue exists as to whether Defendant sold Downey the subject bolts because Downey testified that he received the subject bolts directly from Defendant. (Dkt. No. 24 at 4–5.) Downey testified that he was certain that he received the subject bolts from Defendant and used them in the rebuild of Plaintiffs' engine, pursuant to his "standard practice." (Dkt. No. 19-11 at 177, 179.) But Downey also testified that he could not specifically remember performing the engine rebuild or when the parts for the rebuild were ordered. (*Id.* at 16, 108–09.) Further, Downey stated that he "would assume that [the parts] all came from Defendant" on the basis that he had recently begun to order parts from Defendant. (*Id.* at 109.) Downey did not produce documentary or physical evidence supporting his testimony that the subject bolts came from Defendant. Downey's inconsistent testimony as to his recollection of the engine rebuild, absent supporting physical or documentary evidence, is

insufficient contravene Defendant's evidence and establish a genuine dispute on the issue of whether Defendant provided the subject bolts to Downey.

Plaintiffs next challenges Defendant's order fulfillment process. Plaintiffs first argue that Downey relied on Defendant's salespeople to send him the appropriate parts, contrary to Defendant's testimony. (Dkt. No. 24 at 5–6.) This argument does not address the dispositive issue of whether Defendant sent CMI 22532 bolts to Downey. Plaintiffs next argue that an email from Downey to Defendant asked for 25534 bolts, and state that "the sales person must have recognized this as a mistake, and changed it to part number **22534** on the Sales Order." (*Id*. at 6) (emphasis in original). Plaintiffs assert that "the subject bolts were not part number 25534 or 22534 but were shipped as 22532." (*Id*.) The difference in part number between Downey's email and the sales order is insufficient to create a genuine dispute as to whether Defendant sent Downey CMI 22532 bolts, which did not appear in the email, sales order, or Invoice 127873. Moreover, Plaintiffs do not explain how they concluded that the change in part number between Downey's email and the sales order necessarily means that Defendant in fact shipped CMI 22532 bolts to Downey, contrary to both documents. Therefore, Plaintiffs' challenges to Defendant's order fulfillment process are insufficient to establish a genuine dispute on the issue of whether Defendant provided the subject bolts to Downey.

Therefore, Defendant has carried its burden of showing there is no genuine dispute of material fact regarding the issue of whether Defendant manufactured, sold, or otherwise provided the subject bolts to Downey, and Plaintiffs have failed to come forward with facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Thus, Plaintiffs' claims against Defendant necessarily fail: Defendant is not a manufacturer or product seller of the relevant product as defined by the Washington Product Liability Act and thus cannot be strictly liable as such; Defendant did not owe a duty to Plaintiffs and therefore could not have been negligent; and Defendant did not provide a warranty as to the

subject bolts. (*See* Dkt. No. 1 at 6–10.)[4] Therefore, Defendant's motion for summary judgment is GRANTED.

### B. Motion for Rule 56(d) Continuance

In response to Defendant's motion for summary judgment, Plaintiffs request a continuance of Defendant's motion pursuant to Federal Rule of Civil Procedure 56(d). (Dkt. No. 21 at 5–7.) "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The movant must demonstrate that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). If the movant fails to satisfy these elements, the motion may be denied and summary judgment may be granted. *Id*.

As discussed above, Defendant has established that there is no genuine dispute of material fact on the issue of whether Defendant manufactured, sold, or otherwise provided the subject bolts to Downey based on the evidence in the record. *See supra* Section II.A. Plaintiffs set forth several grounds for continuing Defendant's motion for summary judgment pursuant to Rule 56(d); none have merit. Plaintiffs first argue that they must "confirm" Defendant's assertion that it did not provide the subject bolts to Downey. (Dkt. No. 21 at 6.) Plaintiffs contend that additional discovery, possibly including deposing Holley, subpoenaing "additional [Defendant] suppliers," and other written discovery will be necessary. (*Id*.) Plaintiffs' vague argument does not set forth specific facts it would hope to elicit from the additional discovery, or that such facts

---

[4] Because Plaintiffs' claims cannot survive summary judgment, the Court declines to reach Defendant's argument that any claims against Defendant are barred by the General Aviation Revitalization Act. (*See* Dkt. No. 18 at 22–25.)

exist. *See Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827. Further, the Court notes that Plaintiffs have already had time to "confirm" Defendant's assertion that it did not provide the subject bolts through discovery; in fact, Defendant's counsel made Defendant's position that there was no evidence showing that Defendant provided the subject bolts to Downey clear in the September 6, 2018 letter to Plaintiffs' counsel. (*See* Dkt. No. 34-1.)

Plaintiffs next assert that they "must obtain the hardness specifications for bolts used for a CMI crankshaft gear," arguing that Defendant may be selling bolts that do not meet these specifications and stating "it is necessary to know whether the lesser bolts meet specifications and whether the current specifications are sufficient." (Dkt. No. 21 at 6.) Plaintiffs further contend that "Plaintiffs, along with defendants, will need to conduct hardness testing on the subject bolts to verify the NTSB's results." (*Id.*) But Defendant's motion for summary judgment is premised on Defendant's contention that it did not provide the subject bolts to Downey. Plaintiffs have not established how facts concerning the hardness of bolts sold by Defendant or the subject bolts themselves would be essential, or even relevant, to opposing Defendant's motion for summary judgment. *See Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827.[5]

Plaintiffs then contend that they "must verify the identification of the subject bolts. Although Defendant . . . has identified the manufacturers as CP and CMI, Plaintiffs do not have an independent identification of those bolts." (*Id.* at 6–7.) Plaintiffs do not establish how facts concerning the identities of the subject bolts' manufacturers are essential to opposing Defendant's motion for summary judgment. Specifically, Plaintiffs have not demonstrated that knowing the true identities of the subject bolts' manufacturers would preclude granting summary

---

[5] Plaintiffs have submitted a declaration from Alexander Moffat in support of their motion for leave to file an amended complaint and request for a continuance under Rule 56(d). (*See* Dkt. No. 22.) Moffat's declaration discusses the hardness of the subject bolts and exemplar bolts ordered from Defendant and another supplier. (*Id.* at 2–17.) But as discussed above, Plaintiffs have failed to establish how facts concerning the hardness of the subject bolts or bolts sold by Defendant are essential or relevant to opposing Defendant's motion for summary judgment.

judgment in favor of Defendant on the ground that Defendant did not manufacture, sell, or otherwise provide the subject bolts to Downey. Rather, Plaintiffs' arguments appear to focus on their ability to bring suit against other parties, as opposed to maintaining their suit against Defendant.

Plaintiffs' supporting declaration suffers from similar deficiencies. (*See* Dkt. No. 23.) Plaintiffs assert that additional discovery is necessary to oppose Defendant's motion for summary judgment, but vaguely state that "Plaintiffs' general outline includes confirming whether [Defendant's] assertion that they [sic] did not sell or ship the subject bolts to Thomas Downey is correct" and provide various forms of possible discovery. (*Id.* at 3.) Plaintiffs then argue that they need to confirm Defendant's allegations regarding the subject bolts' manufacturers. (*Id.*) Notably absent are statements specifying the facts Plaintiffs hope to obtain through such additional discovery, that such facts exist, or how those facts are essential to opposing Defendant's motion for summary judgment. (*See id.*)

In sum, Plaintiffs have failed to carry their burden of establishing that a continuance under Rule 56(d) is necessary for them to oppose Defendant's motion for summary judgment, as they have not identified specific facts they hope to elicit from additional discovery, that such facts exist, or how such facts are essential to opposing Defendant's motion for summary judgment. Therefore, Plaintiffs' request for a continuance under Rule 56(d) is DENIED.

### C. Motion for Leave to Amend

Plaintiffs request leave to amend their complaint to "add the manufacturers of bolts that [Defendant] has identified," citing Federal Rule of Civil Procedure 15. (Dkt. No. 21 at 10–11.) The Court's case management scheduling order in this case set the pleading amendment and third-party action deadline as October 5, 2018. (Dkt. No. 11.) Plaintiffs' motion to amend to add third parties was filed January 31, 2019. (Dkt. No. 21.)

"Once the district court ha[s] filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which establishe[s] a timetable for amending pleadings[,] that rule's

standards control[]." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes). A court may deny a motion filed after the scheduling order cut-off date as untimely if a party fails to first move to modify the scheduling order. *See U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985).

Plaintiffs have neither moved to modify the Court's case management scheduling order nor demonstrated good cause meriting any such modification. (*See* Dkt. No. 21 at 10–11.)[6] As Plaintiffs' request for leave to amend is procedurally defective and substantively deficient, Plaintiffs' request is DENIED.

### D. Motion for Sanctions

Defendant moves for sanctions against Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 11. (Dkt. No. 33.) Defendant asserts that Plaintiffs' counsel improperly brought and maintained this action against Defendant with no good faith basis, especially given that

---

[6] In their reply in support of their request for leave to amend, Plaintiffs acknowledge that they should have brought their motion under Rule 16, but argue that their previously-filed materials are sufficient to show good cause under Rule 16(b)(4). (Dkt. No. 31 at 1–2.) But regardless of the merits of their argument, Plaintiffs have still not moved the Court to modify the scheduling order, and therefore their request remains procedurally defective. *See U.S. Dominator*, 768 F.2d at 1104.

Plaintiffs also raise two novel arguments in their reply: that Rule 19(a)(1) requires joinder of the entities they seek to add as parties, and Defendant "actively hid" the identities of Chandler Products and CMI. (Dkt. No. 31 at 2–3.) Neither argument is properly raised. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Further, Plaintiffs have not provided substantive argument in support of their joinder argument, (*see* Dkt. No. 31 at 2), and their accusation that Defendant "actively hid" the identities of the manufacturers of the subject bolts is not supported by the record, (*see, e.g.*, Dkt. Nos. 19-3 at 104, 31 at 2–3).

Defendant's counsel notified Plaintiffs of the evidentiary deficiencies in their case. (*Id*. at 2–4.) In response, Plaintiffs' counsel opposes Defendant's motion and requests their own fees and costs incurred in responding to the motion. (Dkt. No. 38 at 2.)

The Court may impose an appropriate sanction where an attorney or law firm has violated a provision of Federal Rule of Civil Procedure 11(b). Fed. R. Civ. P. 11(c)(1). Rule 11(b) provides that, by signing or presenting a pleading, written motion, or other paper to the Court, an attorney certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)–(4). "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion" for sanctions. Fed. R. Civ. P. 11(c)(2).

Plaintiffs' counsel may have been derelict in misreading Invoice 127873 as showing that Defendant shipped Downey the 22532 bolts at issue, and have not offered any explanation for this lapse, but the Court does not find that such error merits the imposition of Rule 11 sanctions. (Dkt. No. 33 at 5.) Although the Court notes the discrepancies between Downey's statements to the NTSB and his deposition testimony following discussions with Plaintiffs' counsel, the Court declines to infer that any inconsistency was due to improper conduct by Plaintiffs' counsel. (*Id*. at 6–8.) Further, the Court will not fault Plaintiffs' counsel for alleging that Defendant designed

and manufactured 22532 bolts in the complaint, although that factual allegation was not borne out in discovery. (*Id*. at 8.) Finally, the Court declines to conclude that Plaintiffs' counsel violated Rule 11(b) when they pursued their claims against Defendant, including by responding to Defendant's motion for summary judgment to ask for leave to amend and for a Rule 56(d) continuance. (*Id*. at 9–11; *see* Dkt. No. 21.) Therefore, Defendant's motion for sanctions against Plaintiffs' counsel is DENIED. Plaintiffs' counsel's request for their fees and costs incurred in responding to Defendant's motion is also DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 18) is GRANTED, Plaintiffs' motion for leave to amend and for a continuance pursuant to Rule 56(d) (Dkt. No. 21) is DENIED, and Defendant's motion for Rule 11 sanctions (Dkt. No. 33) is DENIED. Plaintiffs' claims against Defendant are DISMISSED.

DATED this 12th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE